```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

SHAKING A. SMITH,
                                          **DECISION AND ORDER**
                Petitioner,                  **No. 05-CV-0069**
     -vs-

JAMES BERBARY, Superintendent,
Collins Correctional Facility

                Respondent.
───────────────────────────────────
```

## I. INTRODUCTION

Petitioner, Shaking A. Smith ("Smith" or "Petitioner"), filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his custody, following a jury trial convicting him of robbery in the first degree (New York Penal Law ("Penal Law") §160.15), menacing in the second degree (Penal Law §120.14), and making a punishable false statement (Penal Law §210.45). Judgment was entered on May 13, 2003 in New York State Supreme Court, Yates County, and was unanimously affirmed by the Appellate Division, Fourth Department on October 4, 2004. People v. Smith, 11 A.D.3d 899 (4th Dept. 2004); *lv. denied*, 3 N.Y. 3d 761 (N.Y. 2004). For the reasons set forth below, this petition is denied.

## II. BACKGROUND AND PROCEDURAL HISTORY

By indictment number 2002/46B, Petitioner was charged with robbery in the first degree, menacing in the second degree, and making a punishable false statement, arising out of the following

incident. On July 25, 2002, Terry J. Petty ("Petty") left a hotel in Bath, New York with approximately $860 dollars to pay for an apartment in Penn Yan, New York. (T. 26-7, 30).[1] Petty secured a ride to Penn Yan with Tyrone Rouse ("Rouse"), Monique Williams ("Williams"), Sawonege Mays, and Petitioner. (T. 29, 31). On the drive to Penn Yan, Rouse, the driver, stopped at a gas station, where Petty pulled out the $860 dollars and offered $5 dollars for gas. Rouse next stopped at Petitioner's girlfriend's house, where all of the occupants of the car, except Petty, exited the car and went inside the house. (T. 29-31). A short time later, the four individuals returned to the car and continued traveling towards Penn Yan. (T. 31-2). Rouse then turned onto Chub-Hollow Road and stopped the car. (T. 33, 83). At this point, Petitioner, who was seated behind Petty on the passenger's side of the car, put a knife to Petty's throat and said "give me the money." (T. 83). Petitioner then told Rouse to take the money from Petty's pocket, which he did, and Petty was instructed to exit the vehicle. (T. 34, 83). Williams testified that Petitioner then got into the front seat, took the money, and put it in the center console of the vehicle. (T. 83). While this was occurring, Petty heard Petitioner say "jig this person," which Petty interpreted to mean "stab him," but instead the four individuals drove away without injuring Petty. (T. 34-5). Williams testified that after they drove away, the four

---

[1] "T." refers to the state trial transcript.

argued about what had occurred, and agreed that things had gotten out of hand and they were worried about going to jail. (T. 83-4). Petitioner then threw the knife out the window of the car. (T. 89).

After being left on Chub Hollow Road, Petty flagged down a truck and asked for a ride and the use of a phone. (131-2). Dawn Pollack ("Pollack") was a passenger in the truck and her son was driving. (T. 130). Pollack offered to call the police when she got home, but refused to give Petty a ride. (T. 131-3). She instructed Petty to go to a nearby home to call the police. (T. 131). Petty reached the home of Carol Louis Cadwell ("Cadwell") and called his girlfriend and his cousin. (T. 36). Petty told Cadwell that he did not want the police involved. (T. 140). Cadwell then offered to give Petty a ride to Penn Yan. (T. 137-8). Shortly after leaving the Cadwell's home, State Trooper, Dale Everetts approached the Cadwell's car and Petty got out and told him he had been robbed. (T. 142). Initially, Petty told police that his name was John Gray and that he was only carrying $400 or $500 dollars, but later, in a sworn statement, told an investigator his real name and that he had $860 when he was robbed. (T. 38, 41, 144, 193).

Some time later, police stopped the car carrying the other four individuals, after identifying the car as the one involved in the robbery. (T. 84-, 159). Williams then attempted to hide the money taken from Petty in her undergarments. Id. After briefly questioning the four suspects, Deputy Brian Winslow of the Yates

County Sheriff's Office handcuffed and transported the four individuals to the Yates County Public Safety building. (T. 159-60, 191). At this time, investigator Todd Sortir ("Sortir"), questioned each of the four individuals separately. (T. 193). Sortir spoke with Petitioner at 5:30 p.m. and advised him of his rights. (T. 195). Petitioner gave a statement, under oath, and signed the statement which contained specific language informing Petitioner that making a false written statement was punishable as a class A misdemeanor. (T. 198). In his statement, Petitioner stated that he did not threaten Petty with a knife and that no one in the vehicle had the knife. (T. 199). He also stated that Petty hit him, got out of the car, and ran, and that he did not tell Petty to empty his pockets. Id. After Petitioner signed his statement, Sortir informed him that his story was inconsistent with the stories of the other suspects and the victim. (T. 202). At this time Petitioner told Sortir where he could locate the discarded knife, which Sortir found on July 26. (T. 202, 204). He also told Sortir that everyone in the vehicle had touched the knife and admitted holding Petty by the throat. (T. 203).

A jury convicted the Petitioner of first degree robbery, second degree menacing, and making a punishable false statement, on February 28, 2003. (T. 330). Petitioner appealed his conviction to the Appellate Division, Fourth Department, claiming (1) the verdict was against the weight of the evidence; (2) the prosecutor

denigrated the defense in his summation; (3) he was denied effective assistance of counsel because (a) counsel had a conflict of interest and (b) counsel pursued and unreasonable trial strategy by conceded the lesser offenses of making a punishable false statement and menacing; and (4) his sentence should be modified in the interest of justice. Brief for Defendant-Appellant, at 4-5, Smith, 11 A.D.3d 899. The Appellate Division unanimously affirmed Petitioner's conviction holding that there was sufficient evidence to support his conviction; his claim that the prosecutor denigrated the defense was not preserved for review, but also was without merit; there was no "potential conflict of interest with respect to defense counsel's representation" and the defendant had failed to show that his defense was affected by the alleged conflict; the defense strategy was reasonable and did not constitute ineffective assistance of counsel; and his claim for a reduced sentence was without merit. Smith, 11 A.D.3d at 900-01). Further leave to appeal was denied by the New York State Court of Appeals. People v. Smith, 3 N.Y.3d (N.Y. 2004).

### III. GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW

**A. The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254 (d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently that [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F. 3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-410. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v.

Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. §2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,

843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.  The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (Citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the independent and adequate state law groud] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not

-8-

the case 'that the procedural-bar issue must invariable be resovled first; only that is ordinarily should be[,]'" (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law")).

### IV. **PETITIONER'S CLAIM**

**A. Prosecutorial Misconduct**

Petitioner first claims that he was denied a fair trial because the prosecutor prejudicially denigrated defense counsel in her summation. (Pet. ¶ 12A).[2] During summation, the prosecutor made the following statement regarding defense counsel's decision to admit Petitioner's guilt on the lesser charges of menacing and making a punishable false statement, "[The] last thing I'm going to say to you is don't let the Defendant's tactics to admit the lesser charges be an easy way out of doing your job. Your job is to make the decisions. You're charged on three charges, consider whether this tactic might be a trial tactic, whether there is a motive from him to take these, oh, yeah, I did these two, but not this. If I admit the lesser, will I not get convicted of the greater because the jury will feel they've done their job, they convicted me of something. Don't take that out. Your job is to consider all three

---

[2] "Pet." refers to Smith's Petition for a writ of habeas corpus.

-9-

charges." (T. 285-6). The Petitioner claims that this was an improper attack on the credibility of defense counsel, leading to an unfair trial.

The Appellate Division, Fourth Department denied this claim on direct appeal because Petitioner had not preserved the issue for review, and because it lacked merit. <u>Smith</u> 11 A.D.3d at 900. Because it is clear that Petitioner forfeited his claim in state court by failing to preserve the issue for appellate review, he cannot now litigate the merits of the claim in a federal habeas proceeding without a showing of cause and prejudice or a fundamental miscarriage of justice necessary to overcome the state procedural bar. <u>Grey v. Hoke</u>, 933 F.2d 117, 120-21 (2d Cir. 1991) (citing <u>Wainright v. Sykes</u>, 433 U.S. 72, 87-91 (1977)). Petitioner has not met this burden, and therefore his claim must be denied. In any event, this Court agrees with the Appellate Division that the Petitioner's claim lacks merit.

In order to grant habeas relief on this issue, the Court must find that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights. <u>See</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 647-48,(1974); <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory

power") (internal quotation marks and citations omitted). To be entitled to relief, petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 823 (2d Cir. 1994) (internal quotation marks and citation omitted). In deciding whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, the Court must consider "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)) (internal quotation marks omitted); *accord* United States v. Parker, 903 F.2d 91, 98 (2d Cir. 1990).

In this case, the Prosecution's comments do not rise to the level of impropriety that would warrant habeas relief. The trial court properly instructed the jury that summations were not evidence, but merely the opinions of counsel, which could be adopted in whole or in part, or rejected entirely based on the jury's own review of the evidence. (T. 288-9). In addition, the evidence in the case suggests that the fleeting comment by the Prosecutor, that defense counsel employed particular "tactics," was not determinative, and a conviction would likely have resulted even in the absence of the statement.

-11-

**B. Excessive Sentence**

Petitioner next claims that his sentence was harsh and excessive because he was offered 6 years for a plea of guilty and his testimony against co-defendants prior to trial, but following a jury trial, he was sentenced to 8 years incarceration with five years post-release supervision for first degree robbery, and one year each for menacing and making a punishable false statement to run concurrently. (Pet. Supplement "Grounds raise in appeal" ¶ 3; Transcript of Sentencing Proceeding at 9). Petitioner argues that because he was sentenced differently than the other individuals involved in the crime and because he was offered a lower sentence before trial, he was effectively punished for exercising his right to a jury trial. (Pet. Supplement "Grounds raise in appeal" ¶ 3).

It is well-settled that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (holding that, "[n]o federal Constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."). Because petitioner's sentence falls within the range prescribed by the New York Penal Law, he does not have standing to raise this issue in his habeas corpus petition.[3] Therefore, Petitioner's claim is denied.

---

[3] Penal Law §70.02 provides that the sentence range for a Class B violent felony, first degree robbery, is between 5 and 25 years. Penal Law §70.15 provides that the sentence for a misdemeanor shall not exceed 1 year.

**C. Ineffective Assistance of Counsel**

Petitioner raises three claims of ineffective assistance of trial counsel: (1) defense counsel failed to object to the prosecutor's allegedly improper remarks in summation; (2) defense counsel employed an untenable strategy in acknowledging Petitioner's guilt for making a punishable false statement and menacing; and (3) defense counsel had a conflict of interest because he was to begin employment at the Steuben County District Attorney's Office following Petitioner's trial, and the trial court failed to consider whether Petitioner would waive such a conflict. (Pet. ¶ 12A-D). The Appellate Division, Fourth Department addressed the last two claims on direct review, and held that there was no potential conflict of interest and that defense counsel's strategy was reasonable and did not deny Petitioner effective assistance of counsel.

**1. Failure to Object**

Petitioner did not raise his claim for ineffective assistance of counsel based on defense counsel's failure to object to the prosecutor's allegedly improper remarks on direct appeal, or at any other time in state court. Because Petitioner failed to apprise the New York State Courts of his constitutional claim with respect to defense counsel's failure to object, this claim is unexhausted. See Hoke, 933 F.2d at 120-21. However, because it is clear that Petitioner would be procedurally barred from bringing this claim in

-13-

state court, it is unnecessary to dismiss his petition entirely for failing to exhaust this claim. Id. (Quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989) ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'")); See N.Y. Criminal Procedure Law §440.10(2)(c) (barring review of a claim if it could have been raised on direct appeal). Therefore, Petitioner's claim for ineffective assistance of counsel is deemed exhausted, but procedurally barred. Hoke, 933 F.2d at 120-21. Petitioner has failed to establish the requisite cause and prejudice or a fundamental miscarriage of justice necessary to overcome the procedural default, and therefore, his claim must be denied. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

**2. Untenable Strategy**

Petitioner also claims that he was denied effective assistance of counsel because the "trial was prejudicially tainted by the untenable strategy that defense counsel embarked upon." (Pet. ¶ 12A). The substance of Petitioner's claim is that defense counsel's statement, conceding that Petitioner had committed the crimes of menacing and making a punishable false statement, was erroneous and denied him effective assistance of counsel. (Pet. ¶ 12A); (T. 20-

21); See also Brief for Defendant-Appellant, at 4, Smith, 11 A.D.3d 899.

The Sixth Amendment to the Constitution provides that the accused in a criminal trial shall have the assistance of counsel for his defense. The right to counsel is fundamental to the criminal justice system; it affords the defendant the opportunity "to meet the case of the prosecution." Strickland v. Washington, 466 U.S. 668, 685(1984). The appropriate Constitutional standard for assessing attorney performance is "reasonably effective assistance." Strickland, 466 U.S. at 687. To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient." Id., 466 U.S. at 687. To determine whether a counsel's conduct is deficient, "[t]he court must ... determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id., 466 U.S. at 690. In gauging the deficiency, the court must be "highly deferential," must "consider[ ] all the circumstances," must make "every effort... to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., 466 U.S. at 688-89. The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors [] have ... a pervasive effect on the inferences to

be drawn from the evidence, altering the entire evidentiary picture." Id. at 695-96. Second, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome . . . would have been different[.]" McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome," Strickland, 466 U.S. at 688; a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Id.*, 466 U.S. at 693. Thus, even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt.

In this case, in his opening statement, defense counsel admitted Petitioner's guilt to two misdemeanors, making a punishable false statement and menacing. (T. 21). Counsel then concentrated his defense on proving that Petitioner did not commit first degree robbery. A review of the record shows that counsel's strategy was reasonable, as there was ample evidence to convict Petitioner of the lesser charges, and counsel zealously attacked the credibility of the evidence relating to the robbery charge through cross-examination. "This course was a plausible strategic option in a case where the evidence ...offered little hope of an acquittal on all counts. It was, therefore, 'virtually

unchallengeable,' [under] Strickland." Farrington v. Senkowski, 214 F.3d 237, 244 (2nd Cir. 2000). Therefore, Petitioner's claim for ineffective assistance of counsel must be denied because Petitioner has not shown that counsel's strategy was defective or that the outcome would have been different.

**3. Conflict of Interest**

Petitioner next claims that counsel could not have provided effective assistance because he had a conflict of interest. (Pet. ¶ 12A-B). Petitioner's argues that because defense counsel had accepted employment at the Steuben County District Attorney's Office, to begin following Petitioner's trial in Yates County, he had a conflict of interest that prejudicially affected his trial. Id. Petitioner further argues that the court erred in not inquiring as to whether Petitioner would waive this conflict. Id.

The Appellate Division held that there was "no potential conflict of interest" and that Petitioner, in any event, failed to show that the alleged conflict affected counsel's performance. Smith, 11 A.D.3d at 901-2. The Appellate Division noted in its decision that defense counsel asked the court to relieve him of his duty to defend Petitioner, but ultimately decided to delay the start of his new employment until after the trial was completed. Id. This action did not create a conflict of interest, it expunged a potential conflict of interest if counsel were to have started employment with the government while defending Petitioner.

In order to succeed on an ineffective assistance of counsel claim involving an attorney's conflict of interest, Petitioner must generally satisfy the test outlined in Strickland. However, in such cases, if Petitioner demonstrates that an actual conflict of interest existed, prejudice is presumed and petitioner need only prove that a "lapse in representation resulted from the conflict.". Cuyler v. Sullivan, 446 U.S. 335, 348-9 (1980). This is not to say that any potential or hypothetical conflict of interest amounts to a denial of effective assistance of counsel. The conflict must be a real one, and it must have a real effect on the attorney's conduct in the trial. United States v. Stantini, 85 F.3d 9, 16-19 (2d Cir. 1996); Lopez v. Scully, 58 F.2d 38, 42 (2d Cir. 1995); Patiwana v. United States, 928 F. Supp. 226, 234 (E.D.N.Y. 1996).

This Court agrees with the Appellate Division's finding that defense counsel in this case was not operating under any actual or potential conflict of interest. Defense counsel requested to be relieved from the case because of a timing conflict with the start of his employment with the District Attorney and the trial, after the Prosecution made a successful motion for a two week adjournment. (T. 24-6). Defense counsel's new employment was in another county and his representation of Petitioner was complete prior to working for the District Attorney. (T. 24). The trial court did not seek a waiver of the conflict from Petitioner, because a conflict did not exist. In addition, after reviewing the

record, this Court finds that counsel's performance was not otherwise deficient to meet the Petitioner's burden under <u>Stickland</u>. Therefore, this Court agrees with the Appellate Division that the Petitioner did not receive ineffective assistance of counsel, and his claim must be denied.

## V. CONCLUSION

For the reasons stated above, petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed. R. App. P. 22(b), this Court denies a certificate of appealability. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962).

ALL OF THE ABOVE IS SO ORDERED.

                                        s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                                   United States District Judge

DATED:   Rochester, New York
           September 25, 2009